UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAPHNYE S. LUSTER,<br><br>       Plaintiff,<br><br>vs.<br><br>RAUL H. AMEZCUA, et al.,<br><br>       Defendants. | 1:16-cv-00554-LJO-GSA-PC<br><br>**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, ON THE GROUND THAT PLAINTIFF'S CLAIMS ARE BARRED BY <u>HECK V. HUMPHREY</u>**<br>**(ECF No. 37.)**<br><br>**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS** |

**I.  BACKGROUND**

Daphnye S. Luster ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  This case now proceeds with the Second Amended Complaint filed on June 11, 2018, against defendant Lieutenant (Lt.) Raul H. Amezcua ("Defendant") for retaliation under the First Amendment.  (ECF No. 24.)[1]

---

[1] On September 24, 2018, the court issued an order dismissing all other claims and defendants from this case for Plaintiff's failure to state a claim.  (ECF No. 28.)

1

On January 17, 2019, Defendant filed a motion for summary judgment on the ground that the undisputed facts show that Plaintiff's claims are barred under the favorable termination doctrine in Heck v. Humphrey, 512 U.S. 477, 486–87 (1994).[2] (ECF No. 37.) On February 21, 2019, Plaintiff filed an opposition to the motion. (ECF Nos. 46-50.) On March 14, 2019, Defendant filed a reply. (ECF No. 55.) The motion is deemed submitted. Local Rule 230(*l*).

For the reasons set forth below, the court concludes that Plaintiff's case is Heck-barred and recommends that Defendant's motion for summary judgment be granted.[3]

## II. SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he only needs to prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec.

///

---

[2] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998). (ECF No. 37-1.)

[3] Because the court decides this matter on the Heck issue, it declines to consider the other issues raised in the motion.

Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The court determines only whether there is a genuine issue for trial. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III. PLAINTIFF'S ALLEGATIONS AT ISSUE[4]

Plaintiff is presently incarcerated at the California Institution for Women in Corona, California. The events at issue in the Second Amended Complaint allegedly occurred at the

---

[4] Plaintiff's Second Amended Complaint is verified, and her allegations constitute evidence where they are based on her personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible. The court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

3

Central California Women's Facility (CCWF) in Chowchilla, California, when Plaintiff was incarcerated there in the custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff's factual allegations follow.

On February 24, 2015, Plaintiff reported a battery that had taken place in her room between two inmates. Battery between these two inmates continued through the next day. On the first day, one of the inmates had to receive staples. On the second day, Plaintiff informed defendant Lt. Amezcua of the incidents, and he [Amezcua] told Plaintiff he was convinced the inmate with the staples had fallen off her top bunk. Plaintiff informed him that this was not true and told him that the whole room would like to make a statement. Lt. Amezcua refused to interview the room. Plaintiff informed Lt. Amezcua that the inmate was being abused by her lover and if he was not going to do anything Plaintiff would then take it to the next level. As part of the WAC,[5] Plaintiff had a duty to help her fellow peers. Lt. Amezcua placed Plaintiff in administrative segregation for the same battery she had reported to him. The retaliation against Plaintiff began.

The false charge against Plaintiff caused her great suffering because she was denied her parole date on December 20, 2015 for having a recent 115,[6] was taken to court for these charges, lost good time credits that she cannot recover and spent fifteen months in the SHU[7] when she could have been preparing for her parole hearing.

Plaintiff seeks monetary damages and to have the Rules Violation Report removed from her prison file.

**IV.   PLAINTIFF'S RETALIATION CLAIM**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

///

---

[5] Women's Advisory Council.

[6] CDCR form 115 is a Rules Violation Report.

[7] Security Housing Unit.

4

because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

After screening the Second Amended Complaint under 28 U.S.C. § 1915A, the court found that liberally construed, Plaintiff states a cognizable claim for retaliation against Defendant Lt. Amezcua. (ECF No. 26 at 10:21-22 (findings and recommendations); ECF No. 28 (adopted by district judge)).

## V. DEFENDANT'S STATEMENT OF UNDISPUTED FACTS (DUF)[8]

Defendant submitted the following Statement of Undisputed Facts. (ECF No. 37-3.)

|   | Defendant's Undisputed Facts | Evidence |
|---|---|---|
| 1. | Plaintiff Daphnye Suppora Luster aka Daphney Suppora Luster (CDCR No. W-54123) is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). | Complaint, ECF No. 1; First Amended Complaint, ECF No. 20; Second Amended Complaint, ECF No. 24 (SAC); Declaration of J. Smith in Support of Defendant's Motion for Summary Judgment (Smith Decl.) at ¶ 3. |
| 2. | Plaintiff filed this action on April 4, 2016, regarding an alleged incident at the Central California Women's Facility (CCWF). | Complaint, ECF No. 1; First Amended Complaint, ECF No. 20; SAC. |
| 3. | Plaintiff's operative complaint alleges, among other things, the following: | *See* SAC, generally. |

---

[8] Plaintiff failed to properly address Defendant's statement of undisputed facts, as required by Local Rule 260(b). Accordingly, the court may consider Defendant's assertions of fact as undisputed for purposes of this motion. Id.; Fed. R. Civ. P. 56(e)(2). However, in light of the Ninth Circuit's directive that a document filed *pro se* is "to be liberally construed," Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, and Rule 8(e) of the Federal Rules of Civil Procedure that "[p]leadings shall be construed so as to do justice," see Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), the court shall strive to resolve this motion for summary judgment on the merits.

|   | Defendant's Undisputed Facts | Evidence |
|---|---|---|
|   | On February 24, 2015, Plaintiff reported a battery that had taken place in Plaintiff's room between two inmates. The battery between these two inmates continued through the next day. On the first day, the inmate had to receive staples. On the second day, Plaintiff informed Defendant Lt. Amezcua of the incidents, and he [Amezcua] told Plaintiff he was convinced the inmate with the staples had fallen off her top bunk. Plaintiff informed him that that was not true, and told him that the whole room would like to make a statement. Defendant Amezcua refused to interview the room. Plaintiff informed Defendant Amezcua that the inmate was being abused by her lover, and if he was not going to do anything Plaintiff would then "take it to the next level." Instead, Defendant Amezcua placed Plaintiff in administrative segregation for the same battery she reported to him. Plaintiff was then charged with the same battery via a Rules Violation Report (RVR), and found guilty. This RVR was false and issued in retaliation for Plaintiff threatening to report Defendant Amezcua to his supervisor for not properly investigating the assault in her housing unit. |   |
| 4. | In screening the Second Amended Complaint, the court found Plaintiff stated a potentially cognizable claim of retaliation against Defendant Amezcua in relation to the issuance of a false RVR following Plaintiff's statement that she would "take it to the next level" if he did not properly investigate the assault. The Court dismissed all other claims and defendants. | ECF Nos. 26, 28. |
| 5. | On May 14, 2015, an investigation into Plaintiff's alleged involvement into the February 24, 2015 incident, was concluded. Due to the information gathered in the investigation, Plaintiff was charged with RVR log number 15-A-05-026 "Battery on an Inmate with a Weapon." | SAC at 29; Declaration of R. Cartier in Support of Defendant's Motion for Summary Judgment (Cartier Decl.) ¶ 4, Exhibit B at 1, 42-46, 61-63; Smith Decl. ¶ 3, Exhibit A. |

| | Defendant's Undisputed Facts | Evidence |
|---|---|---|
| 6. | The investigation revealed that on February 24, 2015, at approximately 1519 hours, two alarms were received. Upon their arrival, responding staff found two broken windows and Inmate Ramirez laying on the floor bleeding from a head wound. The occupants of Room 13 were ordered to exit their room and sit in the dayroom for interviews. Due to the nature of Ramirez's injuries and the suspicious behavior of some of the inmates, Defendant Amezcua instructed responding staff to place all the inmates in restraints and escort them into the facility program office for medical evaluations and urinalysis testing. Due to Ramirez's injuries, she was taken via the Emergency Response Vehicle to the Treatment and Triage Area (TTA) where she received staples to the back of her head. Inmates Luster, Ruiz, and Montford were placed in restraints and escorted to the facility clinic for a medical evaluation. Defendant Amezcua interviewed inmate Ramirez upon her return. During the interview, inmate Ramirez initially stated she had fainted from distress due to hearing bad news from home. She then changed her story, stating she slipped off her bed. Finally, Ramirez informed Defendant Amezcua that she had been drinking alcohol, got drunk, and fell off her bed. Confidential sources subsequently revealed that Plaintiff battered inmate Ramirez with a weapon, specifically a lock. The confidential sources also revealed that another inmate battered Ramirez by punching her in the head and face. As result of this investigation, inmates Luster, Montford, and Ruiz were all placed in Administrative Segregation housing pending further investigation.<br>Investigation and confidential sources revealed that Plaintiff used a lock as a weapon and struck inmate Ramirez in the back of the head and as a result, Ramirez fell to the ground. Plaintiff then began to kick and punch Ramirez. | SAC at 32, 38; Cartier Decl. ¶ 4, Exhibit B at 1-5, 30, 32, 34-35, 42, 45, 60-63; Smith Decl. ¶ 3, Exhibit A. |

| | Defendant's Undisputed Facts | Evidence |
|---|---|---|
| 7. | On June 17, 2015, Plaintiff appeared before the Senior Hearing Officer (SHO) for adjudication of the RVR. | SAC at 24; Smith Decl. ¶ 3, Exhibit A at 2. |
| 8. | In the RVR and incident report, Plaintiff was informed that the matter was referred to the Madera County District Attorney for possible felony prosecution. | SAC at 25; Cartier Decl. ¶ 4, Exhibit B at 5; Smith Decl. ¶ 3, Exhibit A at 3. |
| 9. | Investigative Employee Officer Orozco was assigned in accordance with California Code of Regulations, Title 15, section 3315(d)(1)(A). Officer Orozco interviewed inmate Luster in order to gather information to assist the SHO, and gathered additional evidence as requested. | SAC at 25; Smith Decl. ¶ 3, Exhibit A at 3. |
| 10. | Officer Orozco also interviewed inmate Slater, inmate Valdez, inmate Rico, inmate Reyes, inmate Kusalich, inmate Preasmyer, Defendant Amezcua, Officer Martinez, Sergeant Rubalcava, Licensed Vocational Nurse Shoroye, Sergeant Flores, Officer Valencia, and Sergeant Ybarra per Plaintiff's request. | SAC 19-23, 25-26; Smith Decl. ¶ 3, Exhibit A at 3. |
| 11. | The SHO also considered information from five confidential sources as part of the RVR. | SAC at 26, 29; Smith Decl. ¶ 3, Exhibit A at 1, 4-5, 7-8. |
| 12. | After considering all evidence, including Plaintiff's not guilty plea, the SHO found Plaintiff guilty of "Battery on an Inmate with a Weapon." Plaintiff was assessed 181 days loss of behavioral/work credits. | SAC 27-28; Smith Decl. ¶ 3, Exhibit A at 4-6. |
| 13. | Plaintiff's guilty finding for RVR log number 15-A-05-026 still stands and her credits have not been restored. | Smith Decl. ¶ 4. |
| 14. | The Madera County District Attorney's office prosecuted Plaintiff for the February 24, 2015 incident. | Cartier Decl. ¶ 3, Exhibit A; Cartier Decl. ¶ 4, Exhibit B; Defendant's Request for Judicial Notice, Exhibit A. |
| 15. | On August 11, 2015, the Madera County District Attorney's Office charged Plaintiff with a felony in violation of California Penal Code section 4500 | Cartier Decl. ¶ 3, Exhibit A; Defendant's Request for Judicial Notice, Exhibit A. |

|   | Defendant's Undisputed Facts | Evidence |
|---|---|---|
|   | in case number MCR052134A. Specifically, Plaintiff was charged with unlawfully, with malice aforethought, assaulting inmate Ramirez with a deadly weapon and with force likely to produce great bodily injury while undergoing a life sentence in the California State Prison, Central California Women's Facility. |   |
| 16. | At the August 14, 2015 preliminary hearing, Plaintiff pleaded guilty to California Penal Code section 242, misdemeanor battery arising out of the February 24, 2015 incident. | Cartier Decl. ¶ 6, Exhibit C; Defendant's Request for Judicial Notice, Exhibit A. |
| 17. | As part of her guilty plea, Plaintiff stipulated to the factual basis of the charges. | Cartier Decl. ¶ 6, Exhibit C; Defendant's Request for Judicial Notice, Exhibit A. |
| 18. | As a result of her guilty plea, Plaintiff was sentenced to the Madera County Department of Corrections for three days. She was also ordered to pay $630.00 in fines and restitution. | Cartier Decl. ¶ 6, Exhibit C; Cartier Decl. ¶ 7; Defendant's Request for Judicial Notice, Exhibit A. |
| 19. | This conviction still stands today and has not been overturned. | Cartier Decl. ¶ 9. |

## VI. DEFENDANT'S ARGUMENT -- PLAINTIFF IS BARRED FROM THIS ACTION UNDER THE FAVORABLE TERMINATION RULE IN <u>HECK V. HUMPHREY</u>

Defendant's evidence includes Plaintiff's allegations in her complaints; the declarations of J. Smith (Custodian of Inmates' Case Records) and Rachel Cartier (Senior Deputy District Attorney), Plaintiff's prison records; and, court records.

Defendant argues that a review of Plaintiff's Second Amended Complaint, the associated Rules Violation Report (RVR), and the related criminal case show that Plaintiff's suit is barred under the favorable termination doctrine. Defendant argues that the effect of <u>Heck</u> and its progeny on Plaintiff's claims for retaliation regarding the falsification of the RVR is clear: Plaintiff's demand for damages or declaratory relief on those claims is barred until her conviction

///
///

and the RVR are overturned. Defendant claims that courts in this jurisdiction and in other circuits have concluded that the <u>Heck</u> rule bars retaliation claims.

In support of this argument, Defendant Amezcua cites Plaintiff's allegations that she asked Defendant to investigate a battery in her housing unit and when he refused, Plaintiff threatened to "take it to the next level." (DUF 3-4.) Plaintiff alleges that in retaliation, Defendant placed Plaintiff in administrative segregation and had her charged with the very battery she requested to be investigated. (DUF 3.) Plaintiff was later found guilty of the RVR and was assessed a loss of credits. (DUF 3, 6, 12.) Subsequently, the Madera County District Attorney filed felony charges against Plaintiff arising out of the February 24, 2015 incident, which Plaintiff pleaded guilty to and stipulated to the factual basis of the charges. (DUF 15-18.) Neither the RVR, nor the criminal conviction, have been overturned. (DUF 13, 19.)

Defendant contends that Plaintiff's allegations, taken as true, meet the first two of the three elements of an "ordinary" retaliation claim, because Plaintiff engaged in constitutionally protected activity and she suffered an adverse action that would chill an ordinary person from pursuing that activity again. (ECF No. 37-2 at 8:14-16.) However, Defendant maintains that Plaintiff's retaliation claim is not "ordinary" because it has the character of a claim for retaliatory prosecution, which may not be brought against a prosecutor, who is immune from liability for the decision to prosecute. (<u>Id.</u> at 8:17-19.) Under the Supreme Court's decision in <u>Hartman</u>,[9] Defendant reasons that the causation element of the retaliation claim is lacking without some sort of allegation to "bridge the gap," such as a showing by Plaintiff of a "retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision to go forward." (<u>Id.</u> at 9:11-16.) Defendant concludes that <u>Hartman</u> controls Plaintiff's case insofar as a plaintiff must plead and prove there was no probable cause for his or her arrest and prosecution.

Defendant argues that the litigation of Plaintiff's action would necessarily center on the lawfulness of the underlying criminal conviction and would, in effect, re-litigate Plaintiff's

---

[9] <u>Hartman v. Moore</u>, 547 U.S. 250 (2006).

10

conviction for the February 24, 2015 attack on which she was found guilty following the RVR hearing and to which she pleaded guilty in Madera County, stipulating to the facts that gave rise to the charges. Defendant concludes that Heck clearly forbids this case from going forward because a successful § 1983 action here would negate not only the RVR but Plaintiff's criminal admission to guilt and the facts of the RVR. Thus the motion for summary judgment should be granted.

## VII. DEFENDANT'S BURDEN

The court finds that Defendant has met his burden of demonstrating that Plaintiff's § 1983 case is barred under the favorable termination doctrine in Heck, which was extended under Edwards v. Balisok, 520 U.S. 641 (1997) to actions under § 1983 that, if successful, would necessarily demonstrate the invalidity of confinement or its duration. The burden shifts to Plaintiff to come forward with evidence showing why this case should not be dismissed as barred by Heck.

## VIII. PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS (PUF)

Plaintiff submitted the following facts in support of her opposition to Defendant's motion for summary judgment. (ECF No. 47 at 2-7.)

|   | Plaintiff's Undisputed Facts | Evidence[10] |
|---|---|---|
| 1. | Statement of Facts. Parties. Defendant is a CDCR Lieutenant who was working at CCWF on February 24, 2015. | |
| 2. | Plaintiff is a CDCR inmate who was housed at the Central California Women's Facility (CCWF) on February 24, 2015. | |
| 3. | Two lovers, inmate Ramirez and inmate Montford, had been drinking inmate-manufactured alcohol when inmate Montford started to batter inmate Ramirez by pulling her off | |

---

[10] Plaintiff has not supported her Undisputed Facts by citing to any materials in the record.

11

| | Plaintiff's Undisputed Facts | Evidence[10] |
|---|---|---|
| | the top bunk, causing her to fall and hit her head on the cement floor, resulting in serious injuries to inmate Ramirez that required staples. | |
| 4. | Plaintiff, inmate Ramirez, and inmate Rico were three (3) of the confidential sources that first informed Defendant of the battery and informed Defendant that the battery had taken place on February 24, 2015. | |
| 5. | The other two (2) confidential sources were inmate Ramirez and inmate Montford who turned the incident on Plaintiff. | |
| 6. | When Plaintiff first reported the battery to Defendant, he rehoused inmate Montford in administrative segregation pending an investigation into the attack/battery, not Plaintiff. | |
| 7. | Rules Violation and Investigation.<br>The investigation revealed that on February 24, 2015, at approximately 1519 hours, two alarms were activated. Upon their arrival, responding staff found two broken windows and inmate Ramirez lying on the floor bleeding from a head wound. The occupants of Room 13 were escorted to the dayroom for interviews as to who had broken the windows, and were released back to their room, while the occupants of Room 14 were placed in restraints and escorted to the program office for medical evaluations and urinalysis testing (UA). However, there are no records of those UA results from the lab. Due to inmate Ramirez's injuries, she was taken to the Treatment and Triage area (TTA) where she received staples to the back of her head. Defendant interviewed inmate Ramirez upon her return and during the interview, inmate Ramirez initially stated she had fainted from distress due to hearing bad news from home. Then she changed her story, stating that she slipped off her top bunk. Then, she (Ramirez) stated that she had been drinking alcohol and fell off her bunk. | |

|     | Plaintiff's Undisputed Facts | Evidence[10] |
| --- | --- | --- |
| 8.  | As to the objective, Plaintiff argues that given inmate Ramirez's inconsistent and false statements, as well as the observation and statement from Defendant himself, who stated that he was convinced that Ramirez had fallen off her bunk, Seamons v. Snow, 206 F.3d 1021, 1026 (10th Cir. 2000), the investigation and evidence show inconsistent statements from both Defendant and inmate Ramirez. | |
| 9.  | Investigation and confidential sources four and five (4-5) are inmate Ramirez and inmate Montford [who] stated that Plaintiff used a lock and struck inmate Ramirez in the head. However, within months of investigation, there was never a lock found. | |
| 10. | Investigative Employee Officer Orozco was assigned in accordance with California Code of Regulations, Title 15, section 3315(d)(v)(A). However, officer Orozco never conducted an interview with Plaintiff or Plaintiff's witnesses, as Defendant claims. | |
| 11. | Plaintiff had refused the first Investigative Employee (IE) and was appointed correctional officer Valencia as her IE, who conducted all interviews with Plaintiff and her witnesses during interviews which extended into the 9:30pm count, so Plaintiff had to be out-counted to complete the interviews. | |
| 12. | After Officer Valencia had completed the interviews, then Officer Orozco came to Plaintiff's cell door through the window and informed Plaintiff that Defendant removed Officer Valencia and appointed him as Plaintiff's IE, and that was the extent of any conversation between Officer Orozco and Plaintiff. | |
| 13. | There were never five (5) confidential sources who stated that Plaintiff was the one who attacked inmate Ramirez, because three (3) of the five (5) are Plaintiff, Ruiz, and Rico, with the other two being Ramirez and Montford. | |

13

|  | Plaintiff's Undisputed Facts | Evidence[10] |
|---|---|---|
| 14. | Madera County Criminal Conviction. On August 11, 2015, Plaintiff was given a plea deal for the February 24, 2015 incident, of a misdemeanor and sentenced to 3 days of time served. However, Plaintiff pleaded guilty under distress and out of fear, because inmate Ruiz had to parole to the Madera County Jail when a hold was placed on her due to Defendant's referral of Ruiz for criminal charges without reading her a Miranda warning. The facts and evidence clearly show that Defendant had written up Ruiz only for a "fight," which is not a criminal charge. So Plaintiff was truly experiencing a great deal of distress and fear because she felt there was no way she could receive a fair trial, especially since Defendant got away with [*illegible*] charging Ruiz, and no one, even the courts, noticed. He went forward and charged inmate Ruiz with a battery w/a weapons charge. So Plaintiff took the deal against her attorney's advice out of distress, fear, worry and agony as to what would happen to her and her future. | |
| 15. | Plaintiff's Allegations. On February 24, 2015, an incident occurred in Plaintiff's room between a couple of lovers. The battery between inmate Montford and inmate Ramirez continued through to the next day. On the first day of the incident, February 24, 2015, when Ramirez received staples, and while the whole Room 14 was still in the program office, Plaintiff informed Defendant that the room would like to be interviewed as to how inmate Ramirez received her injuries. Defendant told Plaintiff that he was convinced that Ramirez received her injuries by falling off the bunk. Plaintiff then informed Defendant that Ramirez's statement was not true and Defendant still refused to interview the room. | |
| 16. | The next day after the second battery Plaintiff went to her housing officer S.D. Martinez and informed him that inmate Ramirez was being abused by her lover, inmate Montford, and he | |

14

| | Plaintiff's Undisputed Facts | Evidence[10] |
|---|---|---|
| | informed Plaintiff to take it to Sgt. Flores. Plaintiff did, and Flores told her that he could not do anything about it because it did not happen on his watch (2nd watch). So Plaintiff went to Flores's boss, Sgt. Rubalcaba, and informed him of the battery. Sgt. Rubalcaba also told Plaintiff that he could not do anything because it did not happen on his watch (2nd watch). | |
| 17. | So Plaintiff waited until 3rd watch and went to speak with Defendant again and informed him that he should check on inmate Ramirez because she was being battered by her lover inmate Montford and that is how Ramirez had sustained the injuries to her head and the new injuries. Defendant still informed Plaintiff that he was convinced that Ramirez had fallen off her bed. | |
| 18. | Plaintiff then informed Defendant that she [Plaintiff] would take this incident to the next level. Bibbs v. Early, 541 F.3d 267 (5th Cir. 2008). Under 42 U.S.C. § 1983. Only then did Defendant place inmate Montford in administrative segregation for battery on inmate Ramirez. Then on February 26, 2015, inmate Montford was released from administrative segregation (ASU), and Plaintiff was placed in ASU for the same battery that she broke her neck to report. Plaintiff was seeking protection from unsafe living conditions - protected conduct. Maben v. Thelen, 887 F.3d 252 (2018). | |

## IX. PLAINTIFF'S ARGUMENTS

Plaintiff's evidence includes her allegations in the Second Amended Complaint, the declaration of inmate Sondra Slater (ECF No. 46 at 58), the declaration of inmate Toya Lee (ECF No. 46 at 59), and Plaintiff's prison records.

Plaintiff argues that the undisputed facts show that her claims are not barred under the favorable termination doctrine in Heck, and that Heck is not an inappropriate case to support a First Amendment retaliation claim. Plaintiff asserts that the retaliation caused her extreme

distress when she was denied parole after being incarcerated for 25 years. Plaintiff asserts that she is in the process of contesting her RVR to be overturned via a writ of habeas corpus and is currently awaiting a ruling. Plaintiff contends that once the RVR is overturned there will be a substantial causal relationship between the protected activity and the adverse action. Plaintiff asserts that she pleaded guilty while under total distress, fear, and agony, but that she has new evidence to present that refutes her charges as to the RVR which will meet the third element of her retaliation claim.

As to the declarations of Senior Deputy District Attorney Rachel Cartier and J. Smith, submitted by Defendant, Plaintiff argues they are not credible because "co-workers within an organization have the probability to cover up for one another." (ECF No. 48 at 1:18-22; ECF No. 49 at 1:18-22.) Plaintiff states that she pleaded guilty to the false charges so quickly, without a preliminary hearing, as District Attorney Cartier stated because the courts dropped the charges to a misdemeanor with 3 days' time served, and Plaintiff was fearful that she would not receive a fair jury trial. Plaintiff also states that she suffered the effects of Defendant's retaliation by being denied parole on December 20, 2017 and getting a 5-year roll over, all due to Defendant Amezcua's false report against her.

## X.  DISCUSSION

Defendant argues that Plaintiff's retaliation claim against Defendant Amezcua is barred by the favorable termination rule, also known as the Heck bar. He argues that because Plaintiff was convicted of a criminal misdemeanor, and forfeited 181 days of credit through institutional discipline for the same conduct that she bases her retaliation claim upon, her claim is barred.[11] A state prisoner cannot challenge the fact or duration of his/her confinement in a Section 1983 action; his/her sole remedy lies in habeas corpus relief. Wilkinson v. Dotson, 544 U.S. 74, 78

---

[11] Defendant requests that the court take judicial notice of the court filings and orders in the Superior Court of California. (ECF No. 38.) The court may take judicial notice of court records and administrative records. Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.l (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981); Fed. R. Evid. 201 (a court may take judicial notice of facts that are capable of accurate determination by sources whose accuracy cannot reasonably be questioned). Therefore, Defendant's request for the court to take judicial notice is granted.

(2005). Often referred to as the favorable termination rule or the Heck bar, this exception to § 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement-either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." Wilkinson, 544 U.S. at 81; Heck, 512 U.S. at 486–487; Edwards, 520 U.S. at 644. Thus, "a state prisoner's [Section] 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Id. at 81–82.[12]

The Heck bar also applies in the prison disciplinary context if the "defect complained of by [Plaintiff] would, if established, necessarily imply the invalidity of the deprivation of [her] good-time credits[,]" Edwards, 520 U.S. at 646; Nonnette v. Small, 316 F.3d 872, 875 (9th Cir. 2002), and if the restoration of those credits "necessarily" would "affect the duration of time to be served," Muhammed v. Close, 540 U.S. 749, 754 (2004) (per curiam). See also Nettles v. Grounds, 830 F.3d 922, 929 n.4 (9th Cir. 2016) (en banc) ("Heck applies only to administrative determinations that 'necessarily' have an effect on 'the duration of time to be served.'" (citations omitted)); Ramirez v. Galaza, 334 F.3d 850, 856 (9th Cir. 2003) ("[T]he applicability of the favorable termination rule turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement.").

The defendant has the burden of demonstrating that Heck bars a plaintiff's Section 1983 claim. See Sandford v. Motts, 258 F.3d 1117, 1119 (9th Cir. 2001). "[I]f a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior

---

[12] It's instructive to note however, that if the RVR decision were the only finding against Plaintiff for the battery of inmate Ramirez, and had she not been convicted of a corresponding misdemeanor offense, there is a line of cases following Ramirez v. Galaza, 334 F.3d 850, which could apply to find that Plaintiff's case is not necessarily barred by Heck. Moreover, state prisoners can bring 1983 actions when their lawsuits do not, in effect, collaterally attack the duration of their confinement nor a conviction—for instance, when a prisoner is serving a life term—as it appears Plaintiff is in the case at bar. Moreover, if success in a 1983 lawsuit does not cause an immediate release or a shorter stay in prison, the Heck bar does not apply. But given the facts of the instant case a discussion on this point is merely academic.

for which section 1983 damages are sought, the 1983 action must be dismissed." Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005) (en banc) (quoting Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996)). "In evaluating whether claims are barred by Heck, an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'" Cunningham v. Gates, 312 F.3d 1148, 1153–54 (9th Cir. 2002) (quoting Heck, 512 U.S. at 487 n.6). Thus, a plaintiff's claims are barred when they depend on a theory that calls into question whether she committed the offense for which she was convicted.

Plaintiff argues that her claim is not Heck-barred because Defendant Amezcua's RVR was entirely false. That the events did not happen as Defendant Amezcua described them in the RVR, nor as they were found in the criminal or institutional disciplinary proceedings. Plaintiff argues that she pleaded guilty against the advice of her counsel because the courts reduced the charges to a misdemeanor and she was under duress and fearful that she would not receive a fair jury trial. Plaintiff does not dispute that she has not overturned her criminal conviction or disciplinary punishment, but contends that she is in the process of contesting her RVR via a writ of habeas corpus.

Defendant has met his burden to show that the Heck bar applies here, and Plaintiff's arguments confirm that her claim is barred. According to Plaintiff's opposition, her theory of liability against Defendant Amezcua in this § 1983 action is that Defendant Amezcua made a false report against her because she was attempting to report a battery between two inmates.

Even though claim preclusion does not clearly apply here, the effect of a finding that Plaintiff's RVR decision is invalid would cause an inconsistent decision. Plaintiff was found guilty in her state criminal proceeding based on the same facts relied upon at the RVR hearing. "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate," the doctrines of claim preclusion and issue preclusion "foster reliance on judicial action by minimizing the possibility of inconsistent decision." Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (internal quotation marks and citation omitted.) Here, Plaintiff states that she pleaded guilty to battery in state court. (PUF No. 14.) The Madera County District Attorney filed felony charges against Plaintiff arising out of the February 24, 2015 incident, to which Plaintiff pleaded

guilty and stipulated to the factual basis of the charges. (DUF 15-18.) Neither the RVR nor the criminal conviction have been overturned. (DUF 13, 19.)

A finding in Plaintiff's favor in this case would necessarily imply the invalidity of Plaintiff's criminal conviction and disciplinary punishment as Plaintiff's theory depends on a finding that the charges against her were false. Therefore, the court finds that Plaintiff's First Amendment retaliation claim against Defendant Amezcua is barred by Heck because a favorable termination on the retaliation claim would necessarily imply the invalidity of her misdemeanor conviction, which has not been overturned. As a result, the court recommends that Defendant's motion for summary judgment be granted, and the claim against Defendant Amezcua be dismissed, without prejudice. See Washington v. Los Angeles Cty. Sheriff's Dep't, 833 F.3d 1048, 1055 (9th Cir. 2016) (Heck dismissal is made without prejudice); Belanus v. Clark, 796 F.3d 1021, 1025 (9th Cir. 2015) (same).

## XI. CONCLUSION AND RECOMMENDATIONS

The court finds that Plaintiff's claims in this case are barred by the favorable termination rule of Heck v. Humphrey, and this case should be dismissed without prejudice.

Based on the foregoing, it is **HEREBY RECOMMENDED** that:

1. Defendant Amezcua's motion for summary judgment, filed on January 17, 2019, (ECF No. 37), be GRANTED;
2. Plaintiff's claims against Defendant Amezcua for retaliation in violation of the First Amendment be DISMISSED, without prejudice, as barred by the favorable termination rule of Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L. Ed. 2d 383 (1994); and
3. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** from the date of service of these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served

and filed within ten **(10) days** after the date the objections are filed.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson, 772 F.3d at 838-39 (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **April 1, 2019**  **/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE